# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ANDREA EARLES, )
)
    Plaintiff, )
)
  v. )   Case No. CIV-17-1186-D
)
ROD CLEVELAND, individually acting as )
an Elected Member of the Board of County )
Commissioners for Cleveland County, *et al.*, )
)
    Defendants. )

## ORDER

Before the Court is Defendants' Renewed Joint Motion to Dismiss [Doc. No. 24].

Plaintiff has responded in opposition [Doc. No. 28], and Defendants have replied [Doc.

No. 33]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff, formerly an administrative assistant to the Cleveland County Fair Board

("Fair Board"), asserts claims arising out of Defendants' termination of her employment.

Defendants, who are being sued in their individual capacities[1], are Cleveland County

Commissioners Rod Cleveland and Dary Stacy; Stephan Koranda, former Executive

Director of the Fair Board; and Harlen Fipps and Jimmy Young, members of the Fair

Board.

To summarize, the First Amended Complaint [Doc. No. 22] alleges:

---

[1] The Court previously dismissed with prejudice Plaintiff's state law claims against
Defendants in their official capacities [Doc. No. 19 at 5], and Plaintiff affirms that her
claims are brought against Defendants in their individual capacities [Doc. No. 28 at 11-12,
15].

- In 2010, Plaintiff was hired as an administrative assistant to the Fair Board, pursuant to an oral agreement approved by the nine Fair Board members, unanimously, at an open meeting.

- During her tenure, Plaintiff had no disciplinary problems or write-ups and was well liked by the Fair Board members.

- In November 2013, Koranda was hired as the Executive Director of the Fair Board. Plaintiff, who applied for and was interviewed for the position, asserts that she "was summarily rejected … as she was a younger female and therefore presumably less qualified" than Koranda, the male applicant. [Doc. No. 22 at ¶ 22].

- Stacy was the chairman of the search committee for the Fair Board, and Koranda listed him as a reference on his application. Stacy used his and Cleveland's influence to get Koranda hired.

- Upon assuming the position, Koranda immediately created a hostile and verbally and emotionally abusive environment toward the younger female employees.

- Koranda directed Plaintiff not to have any contact with the Fair Board members as that was now his function. This was a demotion of Plaintiff's previous position and a change in working conditions.

- Koranda was not cordial toward Plaintiff and would regularly stand or take a threatening position around her.

- Koranda falsely accused Plaintiff of having anger issues and conducting personal business on her work computer. When Plaintiff attempted to communicate her complaints with the purported human resources director for Cleveland County ("the County"), Plaintiff was informed that Stacy and Cleveland would support Koranda. Further, the County's HR director refused to assist Plaintiff, asserting that Plaintiff was an employee of the Fair Board and not under the County's jurisdiction.

- When Plaintiff attempted to address her complaints about Koranda to the Fair Board, Plaintiff learned that Fipps and Young had an "understanding" with Stacy and Cleveland not to interfere with Koranda's actions. *Id.* at ¶ 30.

- After Plaintiff attempted to voice her complaints, Koranda became more hostile and Plaintiff became increasingly more isolated at work.

- In January 2014, Plaintiff and Koranda attended a conference together. Koranda drove. Although their rooms at the hotel were close in proximity and Koranda's vehicle was parked directly outside the rooms, Koranda moved the vehicle around

to the front of the hotel after he loaded his luggage. As a result, Plaintiff was forced to carry her luggage to the front lobby.

- In April 2014, Plaintiff was directed to appear before Koranda and the County's HR director. At the meeting, Plaintiff was belittled by Koranda and falsely accused of misconduct. Plaintiff was again directed not to have any contact with the Fair Board members because it made Koranda "look bad." *Id*. at ¶ 32.

- When Koranda forgot to post the agenda for the April 21, 2014 Fair Board meeting, the Fair Board meeting had to be canceled. Koranda blamed Plaintiff for his mishap and bad-mouthed Plaintiff to the Fair Board members.

- Koranda required Plaintiff to attend an employment function that, unbeknownst to Plaintiff, was a speed dating event. The event was "demeaning and degrading to Plaintiff especially as she was engaged to be married." *Id.* at ¶ 36. Koranda watched the event and made jokes and other derogatory comments. He did not require any of the male employees to participate.

- Previously, Plaintiff had been approved by the Fair Board members or Koranda for vacation starting May 9, 2014 until May 16, 2014, for her scheduled wedding and honeymoon. "In an effort to cause Plaintiff additional harm and emotional distress in retaliation for her complaints against Koranda," Cleveland and Stacy directed Assistant District Attorney Jim Robertson to inform Plaintiff that Stacy and Cleveland did not want her around and she had 10 minutes to gather her personal items. *Id.* at ¶ 39. Plaintiff alleges that this event took place on May 5, 2014, and was intentionally designed by Cleveland and Stacy to disrupt her upcoming wedding. ADA Robertson refused to discuss Plaintiff's termination with her, asserting that she was an at will employee and could be let go at any time.

- At the direction of Koranda, Cleveland, and Stacy, a sheriff's deputy was waiting outside to escort Plaintiff from the public property.

- Plaintiff was not terminated by the Fair Board, no meeting was called, and the Fair Board members were purportedly unaware of the personnel action taken by ADA Robertson at the direction of Cleveland, Stacy, and/or Koranda. Fipps and Young knew or had reason to know of the actions by Cleveland, Stacy, and/or Koranda, but did nothing to intervene, even though they were aware that Plaintiff could only be terminated by the Fair Board.

- Plaintiff was denied due process and any form of appeal. No individual county commissioner or individual Fair Board member had any authority to terminate Plaintiff's employment. No open meeting was conducted where Plaintiff's employment or termination was an agenda item. Defendants, acting in concert,

intentionally denied Plaintiff due process by circumventing the established procedures for employees hired by the Fair Board.

- Defendants knew of Plaintiff's closely approaching wedding and scheduled vacation. Acting in concert, they "sought to punish and intentionally cause Plaintiff emotional distress by creating the termination the few days before her wedding plans." *Id.* at ¶ 45.

- When the Fair Board members attempted to discuss Plaintiff's termination at an open meeting, Cleveland, Stacy, Fipps, and Young falsely advised that the Fair Board had no authority. Fipps and Young, pursuant to their agreement with Stacy and Cleveland, did not put the termination matter on the agenda and allowed Plaintiff's termination to become effective. The other Fair Board members were intentionally misled by Fipps and Young.

- On May 28, 2014, Koranda was asked to resign because of the hostility created during his short term of employment and the manner in which Plaintiff was terminated.

- Plaintiff could only be terminated by the Fair Board pursuant to the Oklahoma Open Meeting Act ("OMA").

- Plaintiff asserts that Koranda was investigated for similar harassing conduct with younger female employees at his previous employment with the Norman Convention and Visitors Bureau. Stacy and Cleveland were aware of Koranda's history before he was hired.

- Plaintiff asserts that her employment was terminated by Koranda, Stacy, and Cleveland because of her gender and in retaliation. Plaintiff told Stacy, the Fair Board, and Koranda that there was not a proper fairgrounds inventory, which was Koranda's responsibility. Plaintiff provided Koranda with a list of things he was doing wrong, including taking people out to eat using Fair Board funds, transporting his children in a county vehicle, and allowing a friend to have a free booth at the Norman Farmers Market absent approval from the Fair Board.

Plaintiff asserts federal claims against Defendants under 42 U.S.C. § 1983 for violations of her substantive and procedural due process rights under the Fifth and Fourteenth Amendments, her right to associate with members of the Fair Board under the First Amendment, gender and sexual discrimination under Title VII, and violations of her

Oklahoma constitutional rights.   Plaintiff also asserts state law claims against Defendants for conspiracy to commit intentional torts, tortious interference with prospective economic advantage, and tortious interference with her employment agreement.   Further, Plaintiff asserts an intentional infliction of emotional distress claim against Koranda.

## STANDARD OF DECISION

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.   The "plausibility standard" announced in *Twombly* and *Iqbal* is not a "heightened standard" of pleading, but rather a "refined standard."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (*citing Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). Under the "refined standard," plausibility refers "to the scope of the allegations in the complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Khalik*, 671 F.3d at 1191; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Twombly*, 550 U.S. at 570).

Further, the Tenth Circuit has noted that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context."  *Khalik*, 671 F.3d at 1191 (*quoting Kansas Penn Gaming*, 656 F.3d at 1215).   "Thus, [it has] concluded

the *Twombly*/*Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" *Id*. (*quoting Robbins*, 519 F.3d at 1247).

"In other words, Rule 8(a)(2) still lives. There is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements." *Id.* It remains true that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Twombly*, 550 U.S. at 555); *see also al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) ("*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden."). However, "complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." *Robbins,* 519 F.3d at 1249. Thus, "[t]he *Twombly* standard may have greater bite in such contexts …." *Id.* "[I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1250 (emphasis in original).

Finally, "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [its] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192

(*citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Sanchez v. Hartley*, 810 F.3d 750, 756 (10ᵗʰ Cir. 2016) (*citing Twombly*, 550 U.S. at 556).

## DISCUSSION

Defendants move to dismiss on the following grounds: (1) there is no private right of action for alleged violations of the Oklahoma Constitution; (2) Title VII does not authorize individual capacity claims; (3) protections under the First Amendment do not extend to public employees' interactions with co-workers while performing their official duties; (4) the Fifth Amendment only applies to federal government actors; (5) the procedural and substantive due process protections under the Fourteenth Amendment are only applicable if a public employee has a protected property interest in her government job; and (6) the First Amended Complaint fails to plead facts sufficient to show intentional infliction of emotional distress, a violation of Title VII, conspiracy, and tortious interference.

> (1)    There is no private right of action for violations of the Oklahoma
>         Constitution.  Further, the OMA does not provide a private right of action in
>         employment matters.

Plaintiff alleges that Defendants violated her state constitutional rights under OKLA. CONST. art. II, §§ 2, 7, 22, 33, and 36A. Defendants assert that the Oklahoma Constitution does not provide a private right of action. Even assuming Plaintiff could show a constitutional violation, she has offered no authority suggesting Oklahoma would recognize a private right of action. In *Bosh v. Cherokee County Bldg. Auth.,* 305 P.3d 994,

1001 (Okla. 2013)[2], the Oklahoma Supreme Court recognized a private right of action against a governmental entity for excessive force based on Art. II, § 30 of the Oklahoma Constitution, notwithstanding the limitations of the Oklahoma Governmental Tort Claims Act ("OGTCA"). However, the Oklahoma Supreme Court has since made it explicitly clear that *Bosh* is not a "wide ranging authorization of private rights of action for all claims arguably arising under the Oklahoma Constitution." *See, e.g., Bruning v. City of Guthrie*, Case No. CIV-15-0003-HE, 2015 WL 4925995, at *8 (W.D. Okla. Aug. 18, 2015). "Rather, *Bosh's* rationale is limited to those circumstances where a plaintiff has 'no other avenue' for recovering his or her claimed constitutional injuries." *Id.* (*citing Perry v. City of Norman*, 341 P.3d 689, 692-693 (Okla. 2014)).

After *Bosh,* the Oklahoma Legislature amended the OGTCA to specify that the State's immunity from suit extended to torts arising from alleged violations of constitutional rights. *Barrios v. Haskell County Pub. Facilities Auth.,* 432 P.3d 233, 238 (Okla. 2018); *see also* OKLA. STAT. tit. 51, §§ 152(14), 153(B). First, the Legislature amended the definition of "tort" to include tort claims arising from alleged violations of constitutional obligations. *Barrios*, 432 P.3d at 238; OKLA. STAT. tit. 51, § 152(14). It also made a similar revision to the section describing the scope of the State's tort liability. *Barrios*, 432 P.3d at 238; OKLA. STAT. tit. 51, § 153(B). Lastly, the Legislature mandated that even if a court, nonetheless, recognized a constitutional tort, the claim would be subject to the liability limits provided for in the OGTCA. *Id.*

---

[2] *Superseded by statute as stated in Barrios v. Haskell County Pub. Facilities Auth.,* 432 P.3d 233, 238 (Okla. 2018).

In 2015, the Legislature again amended § 153 of the OGTCA to specify that tort claims arising under the Oklahoma Constitution cannot name any state employee as a defendant unless the employee is alleged to have been acting outside the scope of his employment. *Barrios*, 432 P.3d at 238 n. 18; *see also* OKLA. STAT. tit. 51, § 153(C). In *Barrios*, the Oklahoma Supreme Court concluded that the OGTCA's "specific prohibition against tort suits arising out of the 'operation or maintenance of any prison, jail or correctional facility' is a legislative determination to which [it] must now defer." *Barrios*, 432 P.3d at 240.

Here, Plaintiff has other avenues for recovering her claimed constitutional injuries, and it appears that Plaintiff is also attempting to pursue her state constitutional claims under § 1983. Certainly, Plaintiff is not precluded from taking that approach, assuming she can sufficiently state a claim for relief under § 1983. The Oklahoma Supreme Court has "previously declined to create a new tort cause of action for an alleged constitutional violation where an alternative remedy existed to vindicate the alleged wrong." *Barrios*, 432 P.3d at 239 n. 21 (*citing Perry v. City of Norman*, 341 P.3d 689, 692-693 (Okla. 2014)). Here, § 1983 provides Plaintiff a private cause of action for the alleged deprivation of her federal constitutional rights by county actors. *Id.* Since Article II, Section 7 of the Oklahoma Constitution mirrors the Fourteenth Amendment to the United States Constitution, a violation of this state constitutional right necessarily gives rise to a § 1983 claim. *Id; see also McCormick v. Halliburton, Co.,* 895 F. Supp. 2d 1152, 1157 (W.D. Okla. 2012) ("[T]he Oklahoma Supreme Court has held that 'the same due process protections guaranteed by the 14th amendment [to the United States Constitution] are also

guaranteed by Art. 2, § 2.'") (*quoting E. Okla. Bld. & Constr. Trades Council v. Pitts*, 82 P.3d 1008, 1012 (Okla. 2003)).

Further, Plaintiff is not precluded from bringing tort claims against county government actors in their individual capacity for conduct outside the scope of their employment. *See, e.g., Koch v. City of Del City*, CIV-07-371-D, 2010 WL 1329819, at * 11 (W.D. Okla. March 29, 2010) (the OGTCA's procedural requirements regarding claims against government entities do not apply to an action brought against an employee in his individual capacity for acts outside the scope of employment). "An act of the employee is not in the scope of employment if the employee acted maliciously or in bad faith." *Pellegrino v. State ex rel. Cameron Univ.*, 63 P.3d 535, 537 (Okla. 2003). Plaintiff, in her response brief, appears to suggest that Defendants acted outside the scope of their employment in violating the OMA, OKLA. STAT. tit. 25, § 301, *et seq.* However, the First Amended Complaint includes no suggestion that the acts of Defendants were either outside the scope of their employment or committed in bad faith.[3] Further, the "OMA was enacted for the public's benefit and not to provide a private right of action in employment matters." *Trant v. Oklahoma,* 754 F.3d 1158, 1174 (10th Cir. 2014).

---

[3] To the extent that Plaintiff's response references factual allegations beyond the scope of Plaintiff's First Amended Complaint, the Court has disregarded those allegations, as Plaintiff "may not effectively amend [her] Complaint by alleging new facts in [her] response to a motion to dismiss." *Barnett v. Hall, Estill, et al.*, CV-18-64, 2018 WL 4038117, at * 9 n. 4 (N.D. Okla. Aug. 23, 2018).

*(2)    Title VII does not authorize individual capacity claims.*

Plaintiff concedes that Defendants are not her employers. [Doc. Nos. 22 at ¶¶ 40, 42, 28 at 10]. "Under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate. The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." *Haynes v. Williams,* 88 F.3d 898, 899 (10th Cir. 1996) (emphasis added). Supervisors and managers are not liable for Title VII violations, and liability is imposed only upon an employer. *Id.* Accordingly, Plaintiff's individual capacity claims under Title VII fail.

*(3)    First Amendment protections do not extend to public employees' interactions with co-workers while performing their official duties.*

Out the outset, the Court notes that Plaintiff, in her response, has attempted to raise a new theory for a First Amendment violation that was not alleged in the First Amended Complaint. [Doc. No. 28 at 23].[4] Allegations raised for the first time in Plaintiff's response may properly be treated as a request to amend under FED. R. CIV. P. 15. *See Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 797 n. 26 (10th Cir. 1998). However, the Court does "not favor permitting a party to attempt to salvage a lost case by untimely suggestion of

---

[4] Although Plaintiff does not cite to *Burk v. K-Mart Corp.*, 770 P.2d 24, 29 (Okla. 1989), it appears that Plaintiff is attempting to craft a claim based on the public policy exception to the terminable-at-will rule identified in *Burk*. [Doc. No. 28 at 23]. Yet, the allegations in the First Amended Complaint are limited to the assertion that Defendants denied Plaintiff her First Amendment rights to associate with members of the Fair Board in the context of a § 1983 civil rights claim as opposed to a tort action.

new theories of recovery," especially after the Court has already expressed adverse rulings. *Id.* at 800.

This case was originally filed in state court on February 1, 2016 [Doc. No. 1-2, *Earles I,* CIV-17-33-D (W.D. Okla.)], and removed to federal court on January 10, 2017 [Doc. No. 1, *Earles I*]. On March 8, 2017, the Court granted Plaintiff leave to file an Amended Complaint, and Plaintiff filed her Amended Complaint on March 10, 2017 [Doc. No. 19, *Earles I*]. On May 1, 2017, Plaintiff filed a Notice of Voluntary Dismissal [Doc. No. 31, *Earles I*]. On May 5, 2017, Plaintiff refiled her case in state court [Doc. No. 1-2], and the case was removed to federal court on November 1, 2017 [Doc. No. 1]. On October 16, 2018, the Court dismissed Plaintiff's state law claims against Defendants in their official capacities with prejudice to refiling and dismissed all other claims against Defendants without prejudice to refiling [Doc. No. 19]. Subsequently, Plaintiff filed her First Amended Complaint [Doc. No. 22]. Thus, including Plaintiff's first lawsuit, the First Amended Complaint represents Plaintiff's fourth attempt to bring her claims. Plaintiff's First Amendment tort claim based on public policy has never been alleged as part of this lawsuit or in *Earles I*. Accordingly, the Court disregards those allegations, and turns its analysis to Plaintiff's First Amendment claim under § 1983. *See, e.g.*, *Barnett v. Hall, Estill, et al.*, CV-18-64, 2018 WL 4038117, at * 9 n. 4 (N.D. Okla. Aug. 23, 2018) (Plaintiff "may not effectively amend [her] Complaint by alleging new facts in [her] response to a motion to dismiss.").

 "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Under *Garcetti* and its progeny, a plaintiff must show that the substance of the speech forming the basis for the First Amendment claim involves something that is not a part of the plaintiff's official duties and is a matter of public concern. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007).

Here, Plaintiff alleges that Koranda violated her First Amendment rights by prohibiting her from associating or having any further contact with members of the Fair Board. The controlling factor in Plaintiff's case is that her expressions were made pursuant to her duties as an administrative assistant to the Fair Board. [Doc. No. 22 at ¶¶ 25, 33, 64]. Plaintiff alleges that Koranda's actions were essentially a demotion as Koranda took over Plaintiff's functions of communicating with the Fair Board and overseeing the Fair Board meetings. *Id.* at ¶¶ 25, 33. Koranda allegedly limited Plaintiff's role to taking minutes at the meetings. *Id.* at ¶ 33. Those circumstances distinguish Plaintiff's case from those in which the First Amendment provides protection against discipline.

Plaintiff did not act as a citizen when she conducted her daily professional activities, such as attending Fair Board meetings, communicating with members of the Fair Board, and recording minutes at the meeting. When Plaintiff performed the tasks she was paid to perform, she acted as a government employee. "The fact that [her] duties sometimes

required [her] to speak or write does not mean [Koranda was] prohibited from evaluating [her] performance." *Garcetti,* 547 U.S. at 422; *see also D'Angelo v. Sch. Bd. of Polk County, Fla*., 497 F.3d 1203, 1213 (11th Cir. 2007) (Applying *Garcetti,* the court held that a high school principal's associations in connection with meetings that the principal held or attended about converting the school to charter status were not protected by the First Amendment). "Restricting associational activity that is not undertaken as a citizen, but 'that owes its existence to a public employee's professional responsibilities[,] …. simply reflects the exercise of employer control over what the employer itself has commissioned or created.'" *D'Angelo*, 497 F.3d at 1213 (*quoting Garcetti*, 547 U.S. at 421-422). Accordingly, Plaintiff's First Amendment claim is dismissed.

(4)     *The Fifth Amendment only applies to federal government actors.*

Plaintiff also alleges a due process violation under the Fifth Amendment. However, "[t]he Due Process Clause of the Fifth Amendment applies only to action by the federal government ….[,]" and the federal government is not involved here. *Koessel v. Sublette County Sheriff's Dep't*, 717 F.3d 736, 748 n. 2 (10th Cir. 2013). Accordingly, Plaintiff's Fifth Amendment claim is dismissed.

(5)     *The procedural and substantive due process protections under the Fourteenth Amendment are only applicable if a public employee has a protected property interest in her government job.*

Plaintiff also asserts claims for violations of her procedural and substantive due process rights under the Fourteenth Amendment. [Doc. No. 22 at 24-28]. The Fourteenth Amendment protects citizens from the deprivation of "life, liberty, or property, without due process of law …." U.S. CONST. amend. XIV, § 1.

To determine whether a plaintiff was denied procedural due process, the Court engages in a two-step inquiry: "(1) Did the individual possess a protected interest to which due process protection was applicable?  (2) Was the individual afforded an appropriate level of process?"  *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).  To properly allege a violation of her procedural due process rights, Plaintiff must first demonstrate that she had a protected property interest in her position as an administrative assistant to the Fair Board.  An employee possesses a property interest in public employment only if she has tenure, a contract for a fixed term, a clearly implied promise of continued employment, or if state law allows dismissal only for cause or its equivalent.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972); *Greene v. Barrett*, 174 F.3d 1136, 1140-1141 (10th Cir. 1999).

Plaintiff does not allege that she had tenure, a fixed-term contract, or that she was subject to a state law that permits dismissal only for cause.[5]  She also does not represent that her employer made any oral assurances or promises of continued employment.  Rather, Plaintiff alleges that she "was hired pursuant to an oral agreement approved by the [Fair Board] members at an open meeting …."  [Doc. No. 22 at ¶ 2].  Plaintiff further asserts that she had "a reasonable expectation of continued employment as she was not previously disciplined by her employer nor was any discipline authorized by the Fair Board to be

---

[5] The Court has disregarded Plaintiff's allegation in her response that the County policy manual created an enforceable implied contract.  [Doc. No. 28 at 15].  This is the first reference Plaintiff makes to a policy manual; it was not alleged in her First Amended Complaint.

imposed by Koranda or any other elected official." *Id.* at ¶ 49. Finally, Plaintiff alleges that she could only be terminated by the Fair Board pursuant to its members' compliance with the OMA. *Id.*

Under Oklahoma law, an implied contract can be formed between employers and at-will employees, which is typically a fact question, unless the alleged promises are nothing more than vague assurances. *See Gabler v. Holder and Smith, Inc*., 11 P.3d 1269, 1275 (Okla. Civ. App. 2000) ("While the existence of an implied contract is normally a question of fact, if the alleged promises are nothing more than vague assurances, the implied contract issue may be decided as a matter of law."); *Miner v. Mid-America Door Co*., 68 P.3d 212, 221 (Okla. Civ. App. 2002) (noting that "implied contractual provisions may restrict an employer's freedom to discharge an employee at will, and that such restrictions may arise from employee manuals, oral assurances, and the like"). Pursuant to Oklahoma law, the following factors are weighed in determining whether an at-will employee and employer had an implied contract: "(a) evidence of some 'separate consideration' beyond the employee's services to support the implied term; (b) longevity of employment, (c) employer handbooks and policy manuals, (d) detrimental reliance on oral assurances, pre-employment interviews, company policy and past practices and (e) promotions and commendations." *Hinson v. Cameron*, 742 P.2d 549, 554-555 (Okla. 1987). Plaintiff has alleged none of these factors.

Rather, Plaintiff asserts in her response that the statutory procedures of the OMA created "an enforceable implied contract which was interfered with when the [OMA] was violated." [Doc. No. 28 at 15]. "It remains unclear to the Court how the OMA creates an

implied contract between Plaintiff and the Board." *Trant v. Oklahoma*, 874 F. Supp. 2d 1294, 1302 (W.D. Okla. 2012) (holding that the OMA does not give rise to an implied contract binding the board to adhere to OMA procedures and "does not guarantee an employee any procedural rights by virtue of his employment"). The statutorily required procedure outlined in the OMA is mandated by the Oklahoma Legislature, not the employer. *Id.* "The OMA does not constitute a direct promise to any employee, nor is it a statutory scheme to provide individual relief to a particular class of employees." *Trant v. Oklahoma,* 754 F.3d 1158, 1175 (10th Cir. 2014). Accordingly, Plaintiff's Fourteenth Amendment procedural due process claim is dismissed.

*(b)    Substantive Due Process*

Plaintiff alleges that she was denied both a property interest (continued employment) and a liberty interest (good name and reputation) without due process. "In order to present a claim of denial of 'substantive' due process by a discharge for arbitrary or capricious reasons, a liberty or property interest must be present to which the protection of due process can attach." *Brenna v. S. Colo. State Coll.*, 589 F.2d 475, 476 (10th Cir. 1978). Plaintiff asserts that she "enjoyed a limited property right to the procedures provided by the [OMA]." [Doc. No. 28 at 12]. As evidenced *supra*, Plaintiff has not established that she possessed a property interest in her public employment. Thus, Plaintiff must plead facts to "show a liberty interest exists and then that the liberty interest was infringed upon." *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994).

In most cases in which the Tenth Circuit has considered whether an employee's termination violated a right of substantive due process, the terminated employee had a

property interest in continued employment.  *See, e.g., Workman*, 32 F.3d at 479-481 (a captain in the sheriff's department had a property interest in continued public employment); *Brenna*, 589 F.2d at 476 (tenured college professor); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (tenured law professor).  Even where a property interest in employment is at stake, the Tenth Circuit has expressed uncertainty as to whether the interest should be entitled to substantive due process protection, rather than a right of procedural due process.  *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir. 1998) ("circuit precedent does not clearly delineate what specific property interests in employment are fundamental, and thus protected by the doctrine of substantive due process"); *Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.,* 147 F.3d 1200, 1215 & n. 17 (10th Cir. 1998) (assuming school administrator had a property interest, but noting uncertainty whether the interest was protected by substantive due process); *Archuleta v. Colo. Dep't of Institutions*, 936 F.2d 483, 489 n. 6 (10th Cir. 1991) ("For purposes of this opinion, we assume, without holding, that the plaintiff's property interest is entitled to the protection of substantive due process.").

In analyzing her substantive due process claim, Plaintiff cites to *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014).  [Doc. No. 28 at 13].  In *McDonald,* the Tenth Circuit held that the plaintiff, a mayoral appointee, did not have a due process property interest in continued employment, but the plaintiff did have a liberty interest "in his good name and reputation as they relate to his continued employment."  *Id.*  In making this determination the Tenth Circuit relied on *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994), which involved a plaintiff with a protected property interest in continued employment.  The

Circuit noted in a footnote that the defendants had argued that a liberty interest only exists if coupled with a property interest, but that the district court had found that the claim was not precluded simply because the plaintiff was an at-will employee. *McDonald*, 769 F.3d at 1212 n. 2. In making that determination, the district court in *McDonald* cited to *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir. 1981), which cited to *Paul v. Davis*, 424 U.S. 693, 712-713 (1976). *McDonald v. Miller*, 945 F. Supp. 2d 1201, 1209 (D. Colo. 2013). In *Davis*, the United States Supreme Court held that reputation alone does not implicate any liberty or property interests sufficient to invoke the protection of the due process clause, and that something more than simple defamation by the government official must be involved to establish a claim under § 1983. *Davis*, 424 U.S. at 712.

A public employee facing discharge qualifies for due process protection "only if he can demonstrate that the termination implicates a property or liberty interest protected by the Due Process Clause; if a property or liberty interest is not implicated, 'he must settle for whatever procedures are provided by statute or regulation.'" *Lane v. Town of Dover*, 761 F. Supp. 768, 771 (W.D. Okla. 1991) (*quoting Sipes v. United States*, 744 F.2d 1418, 1420 (10th Cir. 1984)). Liberty interests in employment involve protection of the employee's good name, reputation, honor, and integrity, and the employee's freedom to take advantage of other employment opportunities. *Lane*, 761 F. Supp. at 771 (holding that a police chief did not have a property interest in his employment and that no liberty interest was violated by his discharge). "The manner in which a public employee is terminated may deprive him of either or both of these liberty interests." *Sullivan v. Stark*, 808 F.2d

737, 739 (10th Cir. 1987) (*quoting Miller v. City of Mission, Kan.*, 705 F.2d 368, 373 (10th Cir. 1983)).

In order to assert a liberty deprivation claim, Plaintiff must sufficiently plead the four elements identified in *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994): (1) the statements must impugn the good name, reputation, honor, or integrity of the employee; (2) the statements must be false; (3) the statements must occur in the course of terminating the employee or foreclose other employment opportunities; and (4) the statements must be published. Plaintiff has not sufficiently pled facts to show that the alleged statements were made in the course of her termination or that the alleged statements have precluded her from other employment opportunities.[6] The statements alleged in the First Amended Complaint "do not implicate concerns of constitutional stature." *Sullivan*, 808 F.2d at 739 (termination of a park ranger did not violate his liberty interests where the complaints were that he was negligent and derelict in performing his duties). Plaintiff alleges that Koranda falsely accused her of having anger issues and conducting personal business on her work computer. [Doc. No. 22 at ¶ 28]. Koranda allegedly made statements that Plaintiff "was incompetent and worthless" and that she did not have a good work ethic and disrupted his

---

[6] Plaintiff's cursory statement that the "intentional termination adversely affects her ability to obtain other employment" is not supported by any facts in the First Amended Complaint; thus, the Court will disregard it. [Doc. No. 22 at ¶ 48]. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (In examining a complaint under Fed. R. Civ. P. 12(b)(6), courts should disregard conclusory statements and look only to whether the remaining factual allegations plausibly suggest the defendant is liable). Likewise, Plaintiff's statement that Cleveland led the public to believe that Plaintiff was being disciplined for good cause is not supported by any factual allegations in the First Amended Complaint. [Doc. No. 22 at ¶ 50].

activities. *Id.* at ¶ 33. *See, e.g., Stritzl v. U.S. Postal Serv.*, 602 F.2d 249, 252-253 (10th Cir. 1979) (statement that a postal employee had "poor work habits and low productivity" does not implicate his liberty interests); *Weathers v. W. Yuma County Sch. Dist.*, 530 F.2d 1335, 1339 (10th Cir. 1976) (the fact that termination of an employee makes him less attractive to other employers does not implicate a liberty interest). Simply stated, Plaintiff has not sufficiently alleged that any liberty interest was implicated by Defendants' actions. Accordingly, Plaintiff's Fourteenth Amendment substantive due process claim is dismissed.

> **(6)** **The First Amended Complaint fails to plead facts sufficient to show intentional infliction of emotional distress and a violation of Title VII.**

> **(a)** *Intentional infliction of emotional distress claim against Koranda*

Under Oklahoma law, an action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress. *Gaylord Entm't Co. v. Thompson*, 958 P.2d 128, 149 (Okla. 1998). To prevail on this claim, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Computer Publications, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002).

Recovery under this theory is "governed by very narrow standards," and the "trial court acts as a gatekeeper regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress." *Miner v. Mid-America Door Co.*, 68 P.3d 212, 223 (Okla. Civ. App. 2002); *Welton*, 49 P.3d at 735. A plaintiff must plead facts to show that

a defendant engaged in conduct that was not only unreasonable but was also "'beyond all possible bounds of decency in the setting in which it occurred'" or "'utterly intolerable in a civilized community.'" *Thompson v. State Farm Fire & Cas. Co*., 34 F.3d 932, 942 (10th Cir. 1994) (*quoting Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986)). "[C]onduct is not extreme and outrageous if it amounts to no more than mere insults, indignities, or petty oppressions." *Daemi v. Church's Fried Chicken, Inc*., 931 F.2d 1379, 1388 (10th Cir. 1991).

Oklahoma courts have examined a variety of conduct claimed to be outrageous in the employment setting, establishing a very high bar for actionable conduct. Insufficient facts to support the tort were found where a plaintiff's female supervisor described, during a meeting, how sexual favors could be used to obtain business, made lewd remarks about the plaintiff, and openly made sexual comments in the presence of co-workers. *Anderson v. Okla. Temporary Services, Inc*., 925 P.2d 574, 577 (Okla. Civ. App. 1996). Also deemed insufficient were allegations that the employer telephoned the plaintiff in the middle of the night and "browbeat him for hours," required him to do unnecessary work, and made derogatory sexual comments about his fiancé. *Mirzaie v. Smith Cogeneration, Inc*., 962 P.2d 678, 682-683 (Okla. Civ. App. 1998). "In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff." *Hannah v. TCIM Services, Inc*., Case No. CV-10-255-CVE-FHM, 2011 WL 2173862, at *3 (N.D. Okla. June 2, 2011) (collecting cases where employer's conduct was not extreme and outrageous).

Similarly, the Tenth Circuit, interpreting Oklahoma law, has emphasized the high burden to be met for liability for intentional infliction of emotional distress. *See Daemi,* 931 F.2d at 1388 (affirming the district court's decision that an employer who called an employee derogatory names based on his national origin, compelled him to terminate or otherwise eliminate his Iranian subordinates because of their national origin, required him to take a polygraph after two area stores were robbed, and belittled him publicly at seminars was not actionable in tort for intentional infliction of emotional distress); *see also Merrick v. N. Natural Gas Co., a Div. of Enron Corp.*, 911 F.2d 426, 433 (10th Cir. 1990) (an employee did not allege facts sufficient to constitute intentional infliction of emotional distress where he alleged that his supervisor harshly criticized him and yelled and cursed at him in front of others).

Here, Plaintiff alleges that Koranda stood around her in a threatening manner, falsely accused her of anger problems and conducting personal business on her work computer, belittled her to other government actors and employees, made her carry her own luggage to the front of a hotel, and required her to attend a speed dating event. Although the alleged actions show a level of insensitivity, none of the allegations approach the threshold for an intentional infliction of emotional distress claim, and thus fail to plausibly assert such a claim. Accordingly, this claim against Koranda is dismissed.

### *(b)    Title VII Claim*

Plaintiff asserts claims of gender discrimination and sex discrimination based on a hostile work environment under Title VII. Defendants contend that Plaintiff's allegations are insufficient to state a claim on which relief can be granted. The Tenth Circuit has stated

regarding Title VII claims that "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

A plaintiff establishes a prima facie case of gender discrimination in an employment termination by showing that "(1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017) (internal quotation marks and citation omitted). "'The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination.'" *Id.* (*quoting Kendrick Penske Transp. Services, Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000)). There are no factual allegations to support an inference that Plaintiff's termination or non-hiring for the executive director position were in any way because of or due to her gender. Rather, Plaintiff alleges that Koranda was hired for the executive director position over her because Plaintiff, who was younger, was "presumably less qualified" and Stacy, the chairman of the search committee, was Koranda's friend. [Doc. No. 22 at ¶¶ 20, 22, 58]. She alleges that she was terminated out of retaliation for her complaints about Koranda.[7] Further, Plaintiff does not allege that she was replaced with

---

[7] However, Plaintiff has not asserted a Title VII retaliatory discharge claim, *see, e.g., Miner v. Mid-America Door Co.*, 68 P.3d 212, 220 (Okla. Civ. App. 2002), and her First Amended Complaint lacks factual allegations supporting gender discrimination.

someone outside her protected class after her termination. In fact, she alleges that Koranda was asked to resign less than one month after her termination. [Doc. No. 22 at ¶ 48].

Plaintiff also alleges sexual harassment based on a hostile work environment – a claim recognized in *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). To state a claim of sex discrimination based on a hostile work environment, Plaintiff must plead facts to "'show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment.'" *Morris v. City of Colorado Springs*, 666 F.3d 654, 663 (10th Cir. 2012) (*quoting Medina v. Income Support Div.*, 413 F.3d 1131, 1134 (10th Cir. 2005)).

"Title VII does not establish 'a general civility code.'" *Morris*, 666 F.3d at 663 (*quoting Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998)). "[R]un-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim." *Morris*, 666 F.3d at 664. Rather, "[a]n employer creates a hostile work environment when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (*quoting Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 851 (10th Cir. 2007)). Further, "[a] plaintiff must show that the environment was both objectively and subjectively hostile or abusive." *Morris*, 666 F.3d at 664 (internal quotation marks and citation omitted). Courts assess "'the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position,

*considering all the circumstances.*'" *Id.* (*quoting Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007)) (emphasis in original).

Plaintiff has not pled facts to show that the alleged harassment was severe or pervasive from the perspective of a reasonable person. "[C]omplaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor are not actionable under Title VII." *E.E.O.C. v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 315-316 (4th Cir. 2008) (internal quotation marks and citation omitted). Incidents that "objectively give rise to bruised or wounded feelings" will not satisfy the severe or pervasive test. *Id.* at 315. In other words, "[s]ome rolling with the punches is a fact of workplace life." *Id.* Having to carry one's luggage from the room to the hotel lobby is not the type of activity that a reasonable person would perceive to be hostile or abusive. Further, Koranda's comments about Plaintiff's work ethic and competency level and his "blame-game" accusations are not uncommon insults in American workplaces.

Moreover, Plaintiff has not asserted any facts to show that the alleged harassment interfered with her work performance. *Meritor Sav. Bank, FSB,* 477 U.S. at 65 (Title VII prohibits sexual harassment that unreasonably interferes with an individual's work performance). There are no allegations that Plaintiff, because of Koranda's behavior, was unable to complete her work or that she was criticized or disciplined by the Fair Board prior to her termination. In fact, Plaintiff alleges that prior to her discharge she "adequately and competently performed all essential functions of her job," and she was never

disciplined or reprimanded. [Doc. No. 22 at ¶ 65]. Accordingly, Plaintiff's Title VII claim is dismissed.[8]

> *(7)    Plaintiff's conspiracy to commit intentional torts[9] and tortious interference claims should be remanded.*

Plaintiff rounds out her First Amended Complaint with two tortious inference claims against Cleveland and Stacy: (1) tortious interference with prospective economic advantage and (2) tortious interference with an employment agreement.[10]

Upon consideration, the Court concludes in the exercise of discretion under 28 U.S.C. § 1367(c)(3) that it should decline to exercise supplemental jurisdiction over these claims. Because the Court has dismissed Plaintiff's federal claims, all claims over which the Court has original jurisdiction have been adjudicated.

The Tenth Circuit has observed: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal quotation marks and citation omitted); *see also Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir.

---

[8] In her response brief, Plaintiff offers an alternative theory to support her gender discrimination claim, *i.e.*, a violation under the Equal Protection Clause of the Fourteenth Amendment. The Court has disregarded that theory as it was not raised in the First Amended Complaint.

[9] Plaintiff does not identify in her First Amended Complaint or in her response brief which intentional torts Defendants conspired to commit. "Civil conspiracy itself does not create liability, but enlarges the pool of potential defendants from whom a plaintiff may recover." *Edwards v. Urice*, 220 P.3d 1145, 1152 (Okla. Civ. App. 2008).

[10] Plaintiff clarifies in her response that her tortious interference claims are against Cleveland and Stacy only. [Doc. No. 28 at 24].

2010) (noting a general rule of declining pendent jurisdiction when federal claims are resolved before trial). The Court finds that Plaintiff's state law claims in Counts Four, Five, and Six should be remanded to the state court in which the action was filed.

## CONCLUSION

Based on the foregoing, Defendants' Renewed Joint Motion to Dismiss [Doc. No. 24] is GRANTED in part and DENIED in part. Counts One, Two, and Three are dismissed with prejudice.[11] Counts Four, Five, and Six should be remanded to state court for resolution on the merits, should Plaintiff elect to pursue them.

**IT IS SO ORDERED** this 23rd day of September 2019.

TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[11] The Court finds that Plaintiff need not be granted leave to further amend her pleading. As evidenced *supra* at pp. 11-12, the First Amended Complaint represents Plaintiff's fourth attempt to bring her claims. Although liberality in amendment is important to assure a party a fair opportunity to present her claims, equal attention should be given to the idea that there must be an end to a litigation. *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994); *see also Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (a plaintiff's repeated failure to cure the deficiencies by amendments previously allowed or futility of amendment are reasons to deny leave to amend).